UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60791-CIV-COHN

RAUL SANTIDRIAN and PAULA SANTIDRIAN,

Magistrate Judge Seltzer

    Plaintiffs,

vs.

LANDMARK CUSTOM RANCHES, INC., a Florida corporation, RICK BELL a/k/a RICHARD BELL, Individually and JOE CAPRIO, Individually.

    Defendants.
_____/

## ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion to Dismiss Complaint [DE 7] and Defendant Joe Caprio's Motion to Dismiss Complaint [DE 15], Plaintiffs' Responses thereto, and Defendants' Replies.  The Court has carefully considered the entire record, and is otherwise fully advised in the premises.

### I.  BACKGROUND

Plaintiffs Raul and Paula Santidrian, husband and wife ("Plaintiffs"), filed this action for violations of the Interstate Land Sales Act ("ILSA" or "Act"), 15 U.S.C. § 1701 et seq., and breach of contract related to the sale of a custom home site by Landmark Custom Ranches, Inc ("Landmark").  Plaintiffs allege various violations of the ILSA by Landmark in Count I, individual liability under the ILSA against Landmark's owner, Richard Bell, and its sales agent, Joe Caprio, in Count II, and breach of contract against Landmark in Count III.

On July 3, 2006, Plaintiffs entered into a contract with Landmark for the sale and purchase of a single family estate residence to be built on Lot 12 of a subdivision

named Landmark Ranch Estates consisting of 44 lots in Broward County, Florida. Plaintiffs paid a total of $420,000 as a ten percent deposit on the purchase, pursuant to the Agreement for Sale.  Exhibit 1 to Complaint (hereinafter, "Agreement").  The Agreement was between Landmark as seller and Plaintiffs as buyer.

On April 29, 2008, Plaintiffs demanded that all of Landmark's defaults be cured, that the contract be cancelled or rescinded, and all deposits returned.  Defendants refused and this action followed.

Plaintiffs allege that Defendants violated the ILSA in the following manner:

1) by failing to register its building project with the United States Department of Housing and Urban Development ("HUD") and failing to furnish a property report in advance of signing of the contract.  15 U.S.C. § 1703(a)(1).  Complaint, § 37.

2) by failing to include in the contract stating that the purchaser can revoke the contract within seven (7) days of signing.  15 U.S.C. § 1703(b).  Complaint, § 39.

3) by failing to include in the contract that if the property report was not provided, the contract may be revoked by the purchaser within two years of signing.  15 U.S.C. § 1703©.  Complaint, § 41.

4) by failing to include additional language regarding default rights, thus allowing Plaintiffs to revoke the contract within two years.  15 U.S.C. § 1703(d).  Complaint, §§ 47-48.

5) by virtue of the violations in #1-4, Defendants defrauded the Plaintiffs in violation of 15 U.S.C. § 1703(a)(2).  Complaint, § 49-51.

Plaintiffs' breach of contract claim alleges that Landmark failed to complete construction by the estimated completion date of December 2007 per the contract. Complaint, § 76; Exhibit A, ¶ 7.

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motions.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Defendants move to dismiss the Complaint for failure to state a claim. Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

To the extent Defendants make general arguments that Plaintiffs have failed to make more than conclusory allegations of ILSA violations, the Court concludes that Plaintiffs have made sufficient allegations. Plaintiffs' Complaint in this case is not a

model of proper pleading, as it recites full paragraphs taken verbatim from the ILSA subsection provisions.  However, the Complaint also does contain sufficient factual allegations.  For example, in ¶ 37, the failure to register the Project and provide a Property Report in advance of signing the contract are sufficiently alleged as to § 1703(a)(1).  In ¶ 39, Plaintiffs sufficiently allege the failure to include revocation language required by § 1703(b), while in ¶ 41, the allegations of failure to include additional revocation language are sufficient as to § 1703(c).  Although the allegation in ¶ 48 regarding failure to comply with § 1703(d) is conclusory taken by itself, because the prior ¶ 47 contains the detailed quotation from the ILSA specifying the required disclosures of § 1703(d), the allegations taken as a whole are sufficient to defeat the motion to dismiss.

### B.  ILSA Jurisdiction -- Size of Subdivision

As described above, Plaintiffs' Complaint alleges various violations of different provisions of the ILSA.  A civil action for violations of the ILSA is authorized by 17 U.S.C. § 1709.  However, some ILSA requirements exclude subdivisions containing under 100 lots, while other provisions exclude subdivisions containing under 25 lots.  In this case, in their motion to dismiss, Defendants assert that the development at issue, Landmark Ranch Estates, contains 44 lots, so it should only be governed by the provisions pertaining to subdivisions over 25 lots.  Plaintiffs allege in the Complaint that Landmark Ranch Estates was marketed together with Landmark Custom Homes of Equus, making the total lots over 100, even though the subdivisions were not contiguous to each other.  Complaint, ¶¶ 25-32.  Plaintiffs allege all the elements of a "common promotional plan," as defined in § 1701(4), have been properly plead. Defendants argue that the Equus development was not even in the same county as

Landmark Ranch Estates.

In a case almost exactly on point as to this issue, the United States Court of Appeals for the Eleventh Circuit reversed the granting of a motion to dismiss on this jurisdictional issue regarding number of lots included in a common promotional plan in Eaton v. Dorchester Development, Inc., 692 F.2d 727 (11th Cir. 1982). In discussing the various decisions interpreting "common promotional plan," the Court concluded that the plaintiff must be given an opportunity to engage in discovery on this issue. 692 F.2d at 731. In applying this decision to the present case, the Court concludes that Plaintiffs have made a sufficient factual allegation regarding the number of lots Defendants marketed together to deny a motion to dismiss on this basis.

## C.  Individual Liability

### 1.   Richard Bell

Plaintiffs allege in the Complaint that Defendant Bell is liable under the ILSA as a "Developer" because he is "the President and a Director and Shareholder of Defendant Landmark." Complaint, ¶ 68. No other allegations of Bell's personal involvement in the sale of the property appear in the Complaint, despite the detailed description of the relevant ILSA provisions allegedly violated by him.

Plaintiffs support this theory of extending liability to officers/directors of developers by citing to Kemp v. Peterson, 940 F.2d 110 (4th Cir. 1991), wherein the United States Court of Appeals for the Fourth Circuit affirmed a preliminary injunction order sought by the Secretary of the Department of Housing and Urban Development. This Court does not read Kemp to automatically impose liability upon an officer or director of a corporation otherwise qualifying as a "developer" under the ILSA. The Court in Kemp stated that "it is the officers of the corporation who are behind the

5

alleged fraud." Id., 940 F.2d at 113.  This Court interprets that sentence to refer to the officers of the corporation before the Court in Kemp v. Peterson, not all officers of any corporation accused of fraud.  While an individual could be a "developer," a "developer," is "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. ¶ 1701(5). An individual does not become personally liable under the ILSA without some personal involvement in the sale or offer to sell.  Defendant Bell, though he is alleged to be an officer, director, and more than 10% owner of Landmark Custom Homes, is not alleged to have any personal involvement in the sale at issue in this case.[1]  Therefore, the Court will grant the motion to dismiss as to Defendant Richard Bell.

### 2.  Joe Caprio

The Court reaches a different conclusion as to Defendant Joe Caprio.  He is alleged to have personally participated in the offering to sell the property as an "agent" of the "developer."  Complaint, ¶¶ 69-70.  Caprio argues that Plaintiffs must show that he had "authority" to sell the property, or was named somehow in the Agreement as a seller.  At this motion to dismiss stage, the Court is limited to the four corners of the Complaint and the Agreement.  The assertion that Plaintiffs knew Caprio was only acting as a real estate agent is outside this narrow area of review at this stage.[2]  Secondly, there is no language in the ILSA that requires an agent to have authority to sell a property, since the definition of "agent," includes those who participate in the

---

[1] The Agreement specifically defines Landmark Custom Ranches, Inc. as the "seller," though Richard Bell signed the Agreement for Landmark as its President. Simply signing the sales Agreement and being an owner of the Seller is insufficient for an individual to be liable for ILSA violations.

[2] Defendants allege that Caprio is just a real estate agent employed by ReMax. ReMax is listed as seller's agent on the Agreement, but Caprio is not listed.

6

"offering to sell" any lot in a subdivision.  15 U.S.C. § 1701(6).  The ILSA is directed to advertising and marketing practices, so it makes sense that agent is defined as it is.  As Plaintiffs argue, the principal case relied upon by Caprio interprets a former version of the ILSA.

In Paquin v. Four Seasons of Tennessee, 519 F.2d 1105 (5th Cir. 1975), the United States Court of Appeals for Fifth Circuit[3] affirmed a bench trial decision in favor of a sales representative who did not have authority to set a final price.  However, Plaintiffs assert that the civil liability section of the ILSA (§ 1709) was amended in 1979 to broaden the scope of coverage for agents by shifting the focus to an agent "if the sale or lease was made in violation of §1703(a)," rather than just being able to sue an agent "who sells or leases a lot in violation of [ILSA]."  Plaintiffs' Response in Opposition to Defendant Caprio's Motion to Dismiss [DE 17] at p. 7.  In reply, Defendant Caprio argues that there is no case support for Plaintiff's interpretation.

At this motion to dismiss stage, the Court concludes that Plaintiffs have sufficiently alleged that Caprio was an agent who personally participated in offering to sell a lot to Plaintiffs in violation of the ILSA provisions at issue.  The ILSA does not appear to require "authority" to sell the lot, as it covers agents who offer to sell lots.  In addition, the Paquin case, even if still good law after the 1979 ILSA amendments, was made after a bench trial and a fully developed record.  Therefore, Defendant Caprio's motion to dismiss is denied.

---

[3] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### **D.  Breach of Contract Claim**

Plaintiffs assert a state law breach of contract claim against Defendant Landmark for failing to complete construction by the estimated completion date stated in the Agreement.  Defendants move to dismiss this claim because the Agreement specifically contemplates that the estimate is "subject to change from time to time for any reason and without creating any liability of Seller."   Agreement, ¶ 7 (Exhibit 1 to Complaint).  In addition, the paragraph states that Landmark must perform  "substantial completion" of the project within two years (July of 2008).  Plaintiffs sought recision and filed suit prior to the expiration of the two year period.

The Court may consider documents attached to a complaint which are central to the plaintiff's claim for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment.  Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997) (opinion of then United District Court Judge Stanley Marcus attached to Eleventh Circuit opinion); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D.Fla. 1998).[4]

Upon a review of the Complaint and the Agreement, it would appear that no construction of the factual allegations will support the cause of action for breach of contract.  The contract clearly and unambiguously states that the estimated completion date of December 2007 may change for any reason, but that substantial completion must occur within two years.   Thus, the failure to complete by the estimated completion date does not create any breach of the contract.

---

[4]  These decisions allow consideration of a document filed by a defendant if referenced in a plaintiff's complaint.  In this case, Plaintiffs attached the Agreement.

### III. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion to Dismiss Complaint [DE 7] is hereby **GRANTED** as to Counts II and III and **DENIED** as to Count I;

2. Defendant Rick Bell is therefore **DISMISSED** from this case;

3. Defendant Joe Caprio's Motion to Dismiss Complaint [DE 15] is hereby **DENIED**;

4. Defendants Landmark Custom Ranches and Joe Caprio shall file their Answers by October 24, 2008.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of October, 2008.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record