UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60791-CIV-COHN

RAUL SANTIDRIAN and PAULA SANTIDRIAN,

Magistrate Judge Seltzer

　　　　Plaintiffs,

vs.

LANDMARK CUSTOM RANCHES, INC., a Florida corporation, RICK BELL a/k/a RICHARD BELL, Individually and JOE CAPRIO, Individually.

　　　　Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS FOR JUDGMENT ON THE PLEADINGS, MOTIONS FOR SUMMARY JUDGMENT AND RELATED MOTIONS

　　　　THIS CAUSE is before the Court upon Plaintiffs' Motion for Partial Summary Judgment [DE 93], Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion for Judgment on the Pleadings [DE 94], Defendant Joe Caprio's Motion for Judgment on the Pleadings [DE 105], Plaintiffs' Motion for Extension of Time to Complete Discovery and to Amend Complaint [DE 111], Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion for Summary Judgment [DE 114], Defendant Joe Caprio's Motion for Summary Judgment [DE 118], Defendants' Motion to Strike Affidavit [DE 127] of Raul Santidrian [DE 133] and Plaintiffs' Motion for Leave to File Amended Complaint Contigent Upon Court's ruling [DE 151].  The Court has carefully considered the entire record, and is otherwise fully advised in the premises.

I.  FACTUAL BACKGROUND

　　　　On July 3, 2006, Plaintiffs Raul and Paula Santidrian, husband and wife ("Plaintiffs"), entered into a contract with Landmark Custom Ranches, Inc. ("Landmark")

for the sale and purchase of a single family estate residence to be built on Lot 12 of a subdivision named Landmark Ranch Estates consisting of 44 lots in Broward County, Florida. Plaintiffs paid a total of $420,000 as a ten percent deposit on the purchase, pursuant to the Agreement for Sale. Exhibit 1 to Complaint (hereinafter, "Agreement"). The Agreement was between Landmark as seller and Plaintiffs as buyer.

Plaintiffs were unable to obtain financing to complete the purchase. It is undisputed that Plaintiffs waited until later in 2007 to begin a search for financing. By that time, changes in the real estate market limited their ability to obtain financing to complete the purchase of the $4.2 million home. Defendants, meanwhile, were constructing the home per the agreed upon plans.[1]

On April 29, 2008, Plaintiffs demanded that all of Landmark's defaults be cured, that the contract be cancelled or rescinded, and all deposits returned. Defendants refused and this action followed. After discovery, it is clear that Defendants intended for this purchase to be exempt from the Interstate Land Sales Act ("ILSA") as they did not comply with the property report and other disclosure requirements of the ILSA. Defendants did substantially complete construction of the home within two years, per the Agreement, and Plaintiffs concede that Defendants did not default on the Agreement. A factual dispute does exist as to whether the 44 lots in Landmark Ranch Estates were part of a "common promotional plan," as defined in the ILSA.

---

[1] Although not relevant to the legal issues decided herein, Plaintiffs assert that Defendants were going to build the home pursuant to preexisting plans on speculation, while Defendants assert that this is a custom built home just for Plaintiffs.

II.  PROCEDURAL BACKGROUND

Plaintiffs filed this action on May 23, 2008 for violations of the ILSA, 15 U.S.C. § 1701 et seq., related to the sale of a custom home site by Landmark.  In its initial Complaint, Plaintiffs alleged various violations of the ILSA by Landmark, individual liability under the ILSA against Landmark's owner, Richard Bell, and its sales agent, Joe Caprio, and a breach of contract claim against Landmark [DE 40].  The Court granted in part Bell's motion to dismiss as to Count II and Landmark and Bell's motion to dismiss Count III (breach of contract).  Santidrian v. Landmark Custom Ranches, Inc., 2008 WL 45871820  (S.D.Fla. Oct. 14, 2008).

In response to that order, Plaintiffs filed an Amended Complaint [DE 42].  The Amended Complaint contains claims under the ILSA against Landmark in Count I, against Defendants Bell and Caprio in Count II, and a claim for "Foreclosure of Vendee's Lien" in Count III.  The Amended Complaint also added two paragraphs of allegations concerning Defendant Bell's personal involvement in the sale of the property. Am. Compl., ¶¶12-13.  Defendant Landmark filed an Answer as to Count I and Defendant Caprio filed an Answer to Count II but Defendants Landmark and Bell moved to dismiss Counts II and III, strike the class action allegations, and strike the entire Amended Complaint for failure to obtain leave of court.

The Court denied the motion to strike the entire pleading because a plaintiff can file an amended complaint that seeks to remedy the deficiencies found by a Court, if the Court's dismissal of claims was not "with prejudice," and if filed prior to the filing of an Answer to a remaining claim by a defendant.  Santidrian v. Landmark Custom

Ranches, Inc., 2009 WL 210668, *1 (S.D.Fla. Jan. 28, 2009) (hereinafter, "Santidrian II"). The Court granted the motion to strike the class allegations (without prejudice), denied the motion to dismiss the claim against Bell, and granted the motion to dismiss the equitable lien claim in Count III. Id. at *2. The Court entered a separate order setting new pretrial deadlines for the case, including a deadline to amend the pleadings, though specifically limiting any amendment to the class allegations [DE 84].

After filing answers, Defendants then moved for judgment on the pleadings, while Plaintiffs moved for partial summary judgment. After discovery was completed, Defendants moved for summary judgment. On the last day for discovery and the limited deadline for amending pleadings, Plaintiffs moved for a thirty day discovery extension to resolve pending discovery disputes (i.e., not for new discovery). Plaintiffs' Reply Memorandum in Support of Motion for Extension of Time at ¶ 1 [DE 120]. Plaintiffs also seek an extension of time to complete this discovery review and seek leave for amendments that "will focus on making sure that the pleadings fully reflect the ILSA violation at issue and the enforceability (or lack thereof) of the contract between the parties." Id., ¶ 2. Plaintiffs did later move for leave to amend its complaint to add a claim for common law rescission based upon lack of mutuality of remedies in the contract.

## III.  DISCUSSION

There are several legal issues in this case which are presented in the various motions for judgment on the pleadings and for summary judgment. First, there is the issue of whether Defendants are exempt from the ILSA because the parties' Agreement

requires completion of the new home within two years pursuant to 15 U.S.C. §1702(a)(2). A second issue is whether Plaintiffs can seek rescission of the agreement under a theory of common law rescission due to lack of mutuality of obligations. A third issue is whether Joe Caprio remains liable as an agent for a known principal.

### A.  Motions for Judgment on the Pleadings

Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, accepting all the facts in the complaint as true and viewing them in the light most favorable to the plaintiffs. Moore v. Liberty Nat. Life Ins. Co., 267 F.2d 1209, 1213 (11th Cir. 2001). In this case, Defendants filed motions for summary judgment four weeks after completion of briefing on Landmark's motion for judgment on the pleadings, and ten days after briefing was complete on Caprio's motion for judgment on the pleadings. As the first two issues regarding ILSA exemption and availability of rescission are either statutory construction and/or contract interpretation issues, the Court will address the substance of the motions under a summary judgment standard.

### B.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### C.   ILSA Exemption -- Two-Year Completion Provision

Defendants argue that the parties' Agreement for the sale of land under a contract obligating the seller to erect a building within a period of two years is exempt

6

from the ILSA.  15 U.S.C. § 1702(a)(2).  The parties agreement states that:

> the Seller does, however, agree to substantially complete construction of the Home in the manner specified in this Agreement by a date no later than two years from the date Seller obtains a building permit from the appropriate governmental authority subject however, to delays caused by Buyer, acts of God, the unavailability of materials, strikes, other labor problems, governmental orders or other events beyond Seller's control.

Agreement, ¶ 7.

Defendants rely upon a recent unpublished United States Court of Appeals for the Eleventh Circuit opinion in which the Court found that the developer's obligation to build was unrestricted and the agreement exempt from the ILSA because the defenses of impossibility of performance were available to the developer regardless of the contract provision.  Kenco/The Oaks v. Kamel, 2008 WL 4601715, *4 (11th Cir. October 16, 2008).  The comparable contract language stated:

> by a date no later than one (1) year and eleven (11) months from the date Buyer and Seller execute this Agreement, subject however to delays caused by Buyer or acts of God, the unavailability of materials, strikes, other labor problems, governmental orders, or other events which would support a defense based upon impossibility of performance for reasons beyond the Seller's control.

Id., *3.

Two key distinctions are apparent when comparing the Kenco contract to the one at bar.  First, the language "which would support a defense based upon impossibility of performance for reasons" is omitted from modifying "other events . . . beyond Seller's control."  Thus, the "other events" could be unrelated to recognized legal defenses.  Second, the two year time period does not begin to run until "the date Seller obtains a building permit," rather than from the date the Agreement is executed.

7

This change also could allow the time period to extend beyond two years.[2]

Plaintiffs cite to Harvey v. Lake Buena Vista Resort, LLC, 568 F.Supp.2d 1354, 1359 (M.D.Fla. 2008), wherein the court determined that the exemption did not apply because the contract language stated that:

> The date for completion may be extended by reason of delays incurred by circumstances beyond Seller's control, such as acts of God, war, civil unrest, imposition by a governmental authority of a moratorium upon construction of the Unit or providing of utilities or services which are essential to such construction, casualty losses or material shortages or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by wind, rain, lightning and storms.

The court in the Middle District did not have the benefit of the Kenco decision, but concluded that because this clause went beyond "acts of God" and impossibility to include "any other grounds cognizable in Florida contract law," it broadened the exceptions to the completion date provision to the point that the two-year requirement was illusory.

Recent decisions in this District would disagree with the Harvey decision. In Pilato v. Edge Investors, L.P., 609 F.Supp.2d 1301, 1306, 1308 (S.D.Fla. 2009), the court held that the completion clause may include other legally recognized affirmative defenses under Florida law and still be exempt (clause specifically stated that the two year date was subject to "delays caused by matter which are legally recognized as

---

[2] Under the facts of this case, it is important to note that the fact that construction was substantially completed within two years is irrelevant to the exemption determination. Dorchester Development, Inc. v. Burk, 439 So.2d 1032, 1034 n.1 (Fla.Dist.Ct.App. 1983).

8

defense to contract actions [in Florida]"). Other district courts have held that failure to include the term "impossibility" to describe the events that could cause a delay does not necessarily mean the two-year completion requirement is illusory. See Bloom v. Home Devco/Tivoli Isles, LLC, 2009 WL36594, *5-6 (S.D.Fla. January 6, 2009). However, it is important to note that the clauses in those decisions include the modifier "similar" to describe the "events beyond Seller's control." Id., at *1; Caswell v. Antilles Vero Beach, LLC, 2008 WL 4279555, *1 (S.D.Fla. July 8, 2008).

Applying these cases to the contract language at issue, the Court concludes that the Agreement is subject to the ILSA because it does not limit Defendants to defenses recognized as legal defenses under Florida law. The phrase "other events beyond Seller's control" is not modified by any language, making the two year completion requirement illusory. Moreover, the two year period does not begin until Seller obtains a building permit, which could also delay completion beyond two years due to factors within Seller's discretion.[3] All the other agreements in the cases found by the Court begin the two year period upon execution of the Agreement. Therefore, the parties' Agreement is not exempt under 15 U.S.C. § 1702(a)(2).

Defendants also argue that the ILSA was not intended to protect plaintiffs such as the Santidrians because they admittedly sought rescission due to their inability to

---

[3] The United States Department of Housing guidelines on this issue state that "the contract must not allow nonperformance by the seller at the seller's discretion." Guidelines for Exemptions under the Interstate Land Sales Full Disclosure Act, 61 Fed.Reg. 13596 (Mar. 27, 1996), cited in Pilato, 609 F.Supp.2d at 1307. These guidelines are entitled to some deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). Pugliese v. Pukka Development, Inc., 550 F.3d 1299, 1305 (11th Cir. 2008).

9

obtain financing and not because of any default or fraud by the Defendants. Defendants are essentially asking the Court to look beyond the plain language of a consumer protection statute which the parties agree is unambiguous to find an equitable reason to exempt Defendants (or the Plaintiffs) from the coverage of the statute. This the Court does not have the power to do. Rather, Defendants could have drafted their agreements to be exempt from the ILSA but did not.

### D.  Rescission Claim

Plaintiffs urge this Court to assume that it has pled a common law rescission claim and address the issue of whether the limitation of remedies in the parties' contract, wherein the buyer is limited to a refund of all deposits plus interest as its sole and exclusive remedy (before closing), lacks sufficient mutuality of obligations to render the entire contract unenforceable. See Agreement, ¶ 12. However, Plaintiffs have not pled a separate claim for common law rescission apart from the ILSA claim, despite having sufficient opportunity to include such a claim in its Amended Complaint. The actual contract language in this case presents a close question of whether rescission, though a harsh remedy to be used sparingly under Florida law, should be applied herein, in the absence of an ILSA claim. Essex Ins. Co. v. Zota, 607 F.Supp.2d 1340, 1351 (S.D.Fla.2009) (rescission is ordinarily granted only for fraud, accident or mistake).

Plaintiffs' complaint seeks rescission as an equitable remedy for the alleged violation of ILSA, and not as a separate common law claim. The cases cited by Defendants make clear that the determination under ILSA as to whether rescission is

appropriate is a different question than application of common law rescission.  Kaufman v. City Place South Tower, LLC, 2008 WL 4722106, *6 (S.D.Fla. Oct.21, 2008).[4]  In this case, Plaintiffs take the position that they have always included notice in their Complaint and Amended Complaint that they were seeking common law rescission.  However, Plaintiffs never separately stated a rescission claim apart from ILSA, and did not put Defendants on notice that there could be a common law rescission claim.

In its January Order extending various pretrial deadlines, the Court specifically limited the new deadline for filing of amended pleadings to addition of class action allegations [DE 84 at p. 1].  Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires."  In construing Rule 15(a), the Supreme Court has held that:

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

This Court concludes that Plaintiffs' motion to amend should be denied for

---

[4] The argument of nonmutuality of remedies is raised to thwart ILSA exemption. Samara Dev. v. Marlow, 556 So.2d 1097 (Fla. 1990).  As discussed above, the Court concludes that the contract is not exempt under the two-year completion provision in § 1702(a)(2).  Plaintiffs' common law claim is not moot however, if the Defendants' development is exempt from the 100 lot requirement.

undue delay. Plaintiffs have provided no explanation for why the rescission claim could not have been filed in the Amended Complaint, rather than waiting until the close of discovery. Jennings v. BIC Corp., 181 F.3d 1250 (11th Cir. 1999). Though Plaintiffs in this case did not have as much undue delay as the plaintiff in Jennings, this Court concludes that Plaintiffs have not provided a sufficient explanation for late filing of the amendment. Accord Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1314-15 (11th Cir. 2002) (it is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions); Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida, 342 F.3d 1281, 1285, 1287 (11th Cir. 2003) (amending complaint on the last day of the already extended discovery period – set 18 months after case filed was undue delay).

### E. Agent Liability

Defendant Joe Caprio moves for judgment on the pleadings and for summary judgment on the issue that as the agent for a known principal, he cannot be held liable for any ILSA violations under traditional agency law absent allegations that he personally violated the ILSA.[5] Caprio cites to Van D. Costas v. Rosenberg, 432 So.2d 656 (Fla.Dist.Ct.App. 1983), although distinguishable on its facts, wherein the court stated the general principle in Florida that an agent can avoid personal responsibility on a contract by disclosing the true identity of his principal. Caprio argues that

---

[5] Defendant Caprio also argues that the contract is exempt from the ILSA using similar citations as Defendants Landmark and Bell. See *infra* ¶ III.C.

12

traditional agency principles apply even to statutory actions.  Meyer v. Holley, 537 U.S. 280, 287 (2003) (decision declining to impose Fair Housing Act vicarious supervisor liability on corporate officer who did not personally violate the statute).  Caprio asserts that the undisputed facts are that he was merely the real estate agent who showed the property and acted as a go-between for Defendants Landmark and Richard Bell.  It is undisputed that Bell was personally involved in negotiating the contract and signing the contract on behalf of Landmark.

Plaintiffs oppose the motion because the ILSA specifically includes liability for an  "agent," an issue the Court addressed in denying the initial motion to dismiss.   15 U.S.C. § 1701(6), § 1703(a);  Santidrian I, *3 ("there is no language in the ILSA that requires an agent to have authority to sell a property, since the definition of "agent," includes those who participate in the "offering to sell" any lot in a subdivision.") Plaintiffs distinguish the cases put forth by Defendants on their facts, in that none of those cases exclude liability for an agent.  Moreover, an agent does not absolve himself of liability under a statute by stating that he was acting at the behest of his employer if he took illegal actions.  Housing Opportunities  Project for Excellence, Inc. v. Key Colony #4 Condominium, 510 F.Supp.2d 1003, 1013-14 (S.D.Fla. 2007), citing Dillon v. AFBIC Development Corp., 597 F.2d 556, 562 (5th Cir. 1979).[6]

Plaintiffs also oppose the motion on the grounds that the record indicates that

---

[6] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Defendant Caprio was the exclusive sales director for the Landmark development at issue and had an extensive involvement in Landmark's sales operation. However, other than perhaps lending short-term funds to Defendants Landmark and Bell prior to the contract at issue in this case, there is no evidence that Caprio acted as anything other than Landmark and Bell's agent in this transaction.

Although the ILSA allows an action to be brought against an agent, and the Act states that it is "unlawful for any developer or agent, directly or indirectly" to sell a lot without providing a property report and registering the subdivision, as well as not employing any scheme, untrue statement, or omission of material fact, the statute is silent as to whether personal involvement of a real estate agent is required for liability. 15 U.S.C. § 1703(a). Plaintiffs argue that the ILSA is a strict liability statute and specifically includes "agent," while Defendants rely on the caselaw listed above that traditional agency principles are still to be applied to statutory civil rights actions.

On the one hand, the Court does not accept Defendant's argument that the ILSA could not have intended to include real estate agents where his known principal, the actual developer, is known to the buyer, and where it is clearly the developer's obligation to comply with the reporting and registration requirements of ILSA. Caprio argues that because of title searches and public records, owners of land who are the agent's principal are always known to buyers. Plaintiffs argue that at the time of contract, principals may not be known, though in this case, the principal was known. Caprio's argument goes too far in suggesting that real estate agents can never be

liable under the ILSA.[7]

The Court understands that a policy argument can be made that the purpose of including "agents" (and therefore real estate agents) under the ILSA, would force agents to either question their principal's compliance with the ILSA or remove themselves from participation in the transaction for fear of being liable under the ILSA. Nonetheless, Plaintiffs have not come forward with any case law holding real estate agents liable under ILSA where the principal was known at the time of contract, where there was no evidence of any violation of § 1703(a)(2), where the agent did not have authority to set the price, and where there was no evidence that the agent had personal responsibility for compliance with the registration and reporting requirements of the ILSA. Therefore, under traditional agency principles, Plaintiffs have failed to establish a genuine issue of material fact that Defendant Caprio as an agent had personal involvement in a violation of the ILSA. Meyer v. Holley, 537 at 287. Thus, Defendant Caprio's motion for summary judgment will be granted.

### F. Motion to Strike Affidavit of Raul Santidrian

Defendants have moved to strike the affidavit of Plaintiff Raul Santidrian because it conflicts with his deposition testimony and includes the attachment of a website from 2008 that Defendants claim did not exist in 2006 at the time of the signing

---

[7] Defendant relies again upon Paquin v. Four Seasons of Tennessee, 519 F.2d 1105 (5th Cir. 1975), wherein the United States Court of Appeals for Fifth Circuit affirmed a bench trial decision in favor of a sales representative who did not have authority to set a final price. However, the civil liability section of the ILSA (§ 1709) was amended in 1979 to broaden the scope of coverage for agents who offer to sell lots.

15

of the contract. As to the first issue, in order to disregard an affidavit as a sham, the Court must find an inherent inconsistency between an affidavit and a deposition. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987); Van T. Junkins and Associates v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984). This rule is to be applied sparingly. Defendants have not met their burden to show an inherent inconsistency in this case.

Defendants also argue that the website evidence attached to the deposition lacks personal knowledge and is contradicted by Defendant Bell's testimony that the website for this project did not exist in 2006. First, the issue of a common promotional scheme is not before the Court on the pending motions. Second, Defendants' arguments to strike appear to be aimed at the weight of the evidence presented, rather than its admissibility at the summary judgment stage. Plaintiff's affidavit states that "[t]he content of the attached website looked virtually identical to the website back when the Contract was signed" is based upon personal knowledge. Affidavit of Raul Santidrian, ¶ 10 [DE 127]. Therefore, the motion to strike is denied, though the affidavit played no role in resolving the pending motions addressed in this Order.

## IV. CONCLUSION

The remaining issue for trial is whether Plaintiffs' lot was part of a common promotional plan of 100 lots or more, see Santidrian, 2008 WL 45871820 at * If Plaintiffs' lot was not part of developments under a common promotional plan of more than 100 lots, then the registration and disclosure requirements in §§ 1703(a)(1) and the revocation rights in §§ 1703(b),(c), and (d) are not applicable to this transaction.

16

Pugliese v. Pukka Development, Inc., 550 F.3d 1299, 1306 (11th Cir. 2008).  Although the anti-fraud provision in § 1703(a)(1) would apply to developments over 25 units, the only allegations by Plaintiffs in this case on this claim are that Defendants violated the provisions for which they are exempt.  See Amended Complaint, ¶¶ 41-43, 52-56.  There is no evidence of any untrue statement or omission with regard to the sale of the lot at issue in this case

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Motion for Partial Summary Judgment [DE 93] is hereby **DENIED**;

2. Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion for Judgment on the Pleadings [DE 94] is hereby **DENIED**;

3. Defendant Joe Caprio's Motion for Judgment on the Pleadings [DE 105] is hereby **DENIED**;

4. Plaintiffs' Motion for Extension of Time to Complete Discovery and to Amend Complaint [DE 111] is hereby **DENIED**;

5. Defendants Landmark Custom Ranches, Inc. and Rick Bell's Motion for Summary Judgment [DE 114] is hereby **DENIED**;

6. Defendant Joe Caprio's Motion for Summary Judgment [DE 118] is hereby **GRANTED**;

7. Defendants' Motion to Strike Affidavit [DE 127] of Raul Santidrian [DE 133] is hereby **DENIED**;

8. Plaintiffs' Motion for Leave to File Amended Complaint Contigent Upon Court's ruling [DE 151] is hereby **DENIED**;

9. This case remains on for Calendar Call on Thursday, July 9, 2009 at 9:00am. The Court will hear argument on any remaining motions in limine at that time, if not resolved by the Court or parties before then. The Court also advises the parties that this case is the only remaining civil case left on the trial docket for the week of July 13, 2009. Although the Court had allowed counsel for Defendant Caprio to be excused from the first week of the trial docket [DE 171], now that Defendant Caprio is dismissed, the Court will try this case commencing Monday, July 13, 2009 at 9:00am;

10. The Court shall separately enter summary judgment in favor of Defendant Joseph Caprio and shall deny his remaining motions at DE 140, 141 and 159.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of July, 2009.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF